**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| FLORIDA VIRTUALSCHOOL, a Florida Educational Institution, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.:  6:11-cv-831-Orl-31KRS ) |
| K12 INC., a Delaware Corporation K12 Florida LLC, a Florida Limited Liability Company, | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS K12 INC. AND K12 FLORIDA LLC'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND TO DISMISS FOR LACK OF STANDING**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES    iii

FACTUAL BACKGROUND    3

A.    Plaintiff's Powers and Duties under State Law    3

B.    Plaintiff's Service Mark Registrations    5

C.    Plaintiff's Lobbying Efforts    5

D.    History of the K12 Defendants and their Marks and Acronyms in Florida    7

ARGUMENT    9

I.    Plaintiff Lacks Standing Because It Has No Statutory Authority To File And Pursue This Lawsuit    9

    A.    The Plain Meaning of Plaintiff's Governing Statute Makes Clear That Plaintiff has No Authority to File and Pursue this Lawsuit    10

    B.    Interpretative Aids Confirm that Plaintiff has No Authority to File and Pursue this Lawsuit    12

        1.    Interpretative Canons    12

        2.    Statutory Context    13

        3.    Legislative History    16

    C.    Plaintiff's Limited Authority as a Body Corporate Cannot Save Plaintiff's Lawsuit from Dismissal    17

    D.    The Attorney General has the Authority to Pursue Any Legitimate Intellectual Property Enforcement Actions    19

II.    In The Alternative, The Court Should Dismiss Count I For Lack of Standing Under The Provisions Of The Lanham Act    20

    A.    Plaintiff's Service Mark Registrations Are Void    20

    B.    Plaintiff Cannot Claim Standing As An Exclusive Licensee    22

i

C.      The Court Should Cancel Plaintiff's Service Mark Registrations          24

CONCLUSION                                                                        25

# TABLE OF AUTHORITIES

Page

CASES:

1000 Friends of Florida, Inc. v. Palm Beach County,
   69 So.3d 1123                              11

Belanger v. Salvation Army,
   556 F.3d 1153 (11th Cir. 2009)           10

Borden v. East-European Ins. Co.,
   921 So.2d 587 (Fla. 2006)             10

Central Mfg., Inc. v. Brett,
   492 F.3d 876 (7th Cir. 2007)            25

Christian Coalition of Florida, Inc. v. U.S.,
   662 F.3d 1182 (11th Cir. 2011)           13

College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,
   948 F.Supp. 400 (D.N.J. 1996)         9, 10, 18

Delgado v. U.S. Atty. Gen.,
   487 F.3d 855 (11th Cir. 2007)           14

Department of Environmental Protection v. Landmark Enterprises, Inc.,
   3 So.3d 434 (Fla. Dist. Ct. App. 2009)      10, 14

E.E.O.C. v. Westinghouse Elec. Corp.,
   765 F.2d 389 (3d Cir. 1985)            10

Friends of Everglades v. South Florida Water Management Dist.,
   570 F.3d 1210 (11th Cir. 2009)           12

Great Seats, Ltd. v. Great Seats, Inc.,
   84 U.S.P.Q.2d 1235 (Trademark Tr. & App. Bd. 2007)    22

Gruen Marketing Corp. v. Benrus Watch Co., Inc.,
   955 F.Supp. 979 (N.D.Ill. 1997)          23

Hako-Med USA, Inc. v. Axiom Worldwide, Inc.,
   No. 8:06-CV-1790-T-27EAJ, 2006 WL 3755328 (M.D. Fla. Nov. 15, 2006) 20, 23, 24

iii

**TABLE OF AUTHORITIES—Continued**

Page

Katherine's Bay, LLC v. Fagan,
    52 So.3d 19 (Fla. App. 2010)                                                                18

Medberry v. Crosby,
    351 F.3d 1049 (11th Cir. 2003)                                                              18

Morse v. Dade County Canvassing Bd.,
    456 So.2d 1314 (Fla. Dist. Ct. App. 1984)                                                   10

New York v. United States,
    505 U.S. 144 (1992)                                                                         19

Nikolits v. Nicosia,
    682 So.2d 663 (Fl. Dist Ct. App. 1996)                                                      17

Peck Plaza Condominium v. Division of Florida Land Sales and Condominiums,
    Dept. of Business Regulation,
    371 So.2d 152 (Fla. Dist. Ct. App. 1979)                                                    10

R.C. v. State,
    948 So.2d 48 (Fla. App. 2007)                                                               18

Sonwa Intern. Corp. v. Mustek Corp.,
    No. 86 Civ. 4262 (JFK), 1987 WL 6150 (S.D.N.Y. Jan. 30, 1987)                               22

State ex rel. Greenberg v. Florida State Bd. of Dentistry,
    297 So.2d 628 (Fla. Dist. Ct. App. 1974), cert. dismissed,
    300 So.2d 900 (Fla. 1974)                                                                  9, 10

Sykes Lab., Inc. v. Kalvin,
    610 F. Supp. 849 (C.D. Cal. 1985)                                                           24

Thompson v. Wainwright,
    714 F.2d 1495 (11th Cir. 1983)                                                              19

U.S. v. McNab,
    331 F.3d 1228 (11th Cir. 2003)                                                            11, 16

United Auto. Ins. Co. v. Salgado,
    22 So.3d 594 (Fl. Dist. Ct. App. 2009)                                                      13

## TABLE OF AUTHORITIES—Continued

Page

University of Florida Bd. of Trustees v. Andrew,
   961 So.2d 375 (Fl. Dist. Ct. App. 2007)                11, 12, 15

Warden v. Falk,
   No. Civ. A. 11–2796, 2011 WL 4403033 (E.D.Pa. Sept. 21, 2011)        22

**STATUTES:**

15 U.S.C. § 1051                                             5, 21

15 U.S.C. § 1051(a)(3)                                       5, 21

15 U.S.C. § 1114                                             20, 25

15 U.S.C. § 1114(1)                                          20, 24

15 U.S.C. § 1119                                             24, 25

15 U.S.C. § 1051(a)                                          21

1992 Fla. Sess. Law Serv. Chapter 92-93 (1992)              14

1996 Fla. Sess. Law Serv. Chapter 96-320 (1996)            14

Fl. Stat. § 228.082                                         3, 4, 10

Fl. Stat. § 228.9015                                        13

Fl. Stat. § 228.9015(2)                                     13

Fl. Stat. § 331.305                                         13, 14

Fl. Stat. § 1001.451                                        13

Fl. Stat. § 1002.36                                         15

Fl. Stat. § 1002.37                                         *passim*

Fl. Stat. § 1002.37(2)(c)                                   *passim*

Trademark Act § 1(a)                                        22

v

**TABLE OF AUTHORITIES—Continued**

Page

**OTHER AUTHORITIES:**

Merriam-Webster's Collegiate Dictionary 1301 (10th ed. 1999)          11

Plaintiff Florida VirtualSchool, an agency of the State of Florida, filed this lawsuit on May 18, 2011, accusing K12 Inc. and K12 Florida LLC (collectively, the "K12 Defendants") of infringing the service marks FLORIDA VIRTUALSCHOOL and FLVS, which are registered to the Plaintiff as the putative owner, with the registration of FLORIDA VIRTUALSCHOOL specifically disclaiming exclusive rights in the term "VirtualSchool." Compl. ¶¶ 16, 18 & Exs. A & B.  In particular, Plaintiff has claimed that the K12 Defendants' use of the marks FLORIDA VIRTUAL ACADEMY and FLORIDA VIRTUAL PROGRAM and the corresponding acronyms FLVA and FLVP (collectively, "Accused Marks and Acronyms") violates the Lanham Act and state common law.

Plaintiff's Complaint came as a complete surprise to the K12 Defendants.  Plaintiff had been on notice of the K12 Defendants' use of Accused Marks and Acronyms for years. That delay alone would bar Plaintiff's claims under the doctrine of laches.  Even putting aside this delay, Plaintiff's claims are foreclosed by the doctrine of acquiescence.  Plaintiff is a creature of state statute and exists as an agency of the State of Florida.  And the State of Florida, through its Department of Education, specifically approved the K12 Defendants' use of the Accused Marks and Acronyms.  In essence, Plaintiff, an agency of the State, seeks to challenge conduct that already had been authorized by the State.  That behavior by a state agency would be impermissible even if Plaintiff had standing to assert the claim.

Plaintiff lacks that standing.  The K12 Defendants' made this determination in the course of investigating their laches and acquiescence defenses, when they requested, *inter alia*, certain relevant communications exchanged between (i) Plaintiff and (ii) lobbyists, elected officials, the State of Florida, and/or the Florida Department of Education.  On April

1

10, 2012 – the day before the deposition of one of its lobbyists – Plaintiff produced a supplemental discovery response featuring a series of lobbying communications sent from its trial counsel to members of the Florida legislature and their staff.  See Ex. A.  The documents drew to the K12 Defendants' attention Plaintiff's governing statute and revealed, for the first time, a third bar to the claims at issue in this proceeding:  Plaintiff's  lack of standing to assert them.  See id.

As an agency of the State of Florida, Plaintiff has only those powers specifically granted to it by the state legislature.  And Plaintiff's governing statute is absolutely clear on the limited scope of those powers.  "Ownership of all such patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein" – **including ownership of the marks asserted in this litigation** – "shall vest in the state."  Fla. Stat. § 1002.37(2)(c).  Plaintiff has the power to use those marks; it may even retain revenue derived in connection with the use of those marks.  See id.  But as Plaintiff itself has realized, it cannot police those marks, it cannot protect those marks, it cannot enforce those marks, and it most certainly cannot file suit based on those marks.  Those rights belong exclusively to the State of Florida.

The state legislature intended for those rights to be asserted, if at all, by the state attorney general.  This approach makes sense as a policy matter.  It enables the attorney general to take a broad view of the State's interests and needs.  It therefore should serve to prevent the sort of conflicts exemplified here, where one state agency, Plaintiff, sought to bring suit based on conduct expressly authorized by the State.

For these reasons, and as explained below, the Court should dismiss all of Plaintiff's claims for lack of standing.  In the alternative, in the event the Court finds that Plaintiff does

2

have standing to assert certain claims against the K12 Defendants, the Court should dismiss Plaintiff's claim for infringement of federally registered service mark and should cancel Plaintiff's service mark registrations:  Plaintiff's registrations are void *ab initio* because Plaintiff misrepresented itself to the Patent & Trademark Office as the owner of the marks – which it is not – and Plaintiff has no standing under the Lanham Act to have registered them or to enforce them in this litigation.

## FACTUAL BACKGROUND

### A.    Plaintiff's Powers and Duties under State Law

Plaintiff, previously named "Florida On-Line High School," was created by state law in June 2002, pursuant to Section 228.082 of the Florida Statutes.   The statute explained the purpose of the entity:  "The Florida On-Line High School is established for the development and delivery of on-line and distance learning education."  Fla. Stat. § 228.082(1) (attached hereto as Ex. B).  The statute dictated the nature and governance of the entity:  "The Florida On-Line High School shall be governed by a board of trustees comprised of seven members appointed by the Governor . . . .   The board shall be a public agency entitled to sovereign immunity pursuant to s. 768.28, and board members shall be public officers who shall bear fiduciary responsibility for the Florida On-Line High School."  Fla. Stat. § 228.082(2).  The statue proceeded to enumerate the "powers and duties" of that board, including its intellectual property rights.  In particular, the statute explained that while the board could use and retain revenues derived from "patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein," ownership of any such intellectual property, "shall vest" in the State:

> The board of trustees . . . may acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests

thereunder or therein.  **Ownership of all such** patents, copyrights, **trademarks, licenses, and rights or interests thereunder or therein shall vest in the state,** with the board having full right of use and full right to retain the revenues derived therefrom.  Any funds realized from patents, copyrights, trademarks, or licenses shall be used to support the school's research and development activities in order to improve courseware and services to its students.

Fla. Stat. § 228.082(2)(d) (emphasis added).  Nowhere does that provision – or any other provision or statute – invest Plaintiff with the authority to police, protect, enforce, or file suit in regard to the intellectual property rights and interests that belong to the State.

Since its enactment in June 2000, Plaintiff's governing statute has been renumbered as Section 1002.37 of the Florida Statutes.  It also has been amended on several occasions.  These amendments changed Plaintiff's name to "Florida Virtual School."  See Fla. Stat. § 1002.37(1)(a).  They elaborated on Plaintiff's purpose:  "The mission of the Florida Virtual School is to provide students with technology-based educational opportunities to gain the knowledge and skills necessary to succeed."  Fla. Stat. § 1002.37(1)(b).  They expanded the manner in which Plaintiff could use "funds realized from [the] patents, copyrights, trademarks, or licenses" – enabling Plaintiff to use those funds for marketing activities, as well as "to support the school's research and development activities."  Fla. Stat. § 1002.37(2)(c).  But in all other respects described above, the nature, governance, and powers of Plaintiff remain the same.

Plaintiff continues to "be governed by a board of trustees comprised of seven members appointed by the Governor[.]"  Fla. Stat. § 1002.37(2).  The board remains "a public agency entitled to sovereign immunity pursuant to s. 768.28, and board members [remain] public officers who shall bear fiduciary responsibility for the Florida Virtual

4

School."  Id.  While Plaintiff retains "full right of use and full right to retain the revenues derived" from intellectual property, the State continues to own all such patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein.  Fla. Stat. § 1002.37(2)(c). And, as before, Plaintiff  has no authority to police, protect, enforce, or file suit in regard to intellectual property rights and interests that belong to the State.  See id.

### B.    Plaintiff's Service Mark Registrations

Notwithstanding the fact that it does not own any of the intellectual property it uses, Plaintiff filed applications to register the service marks FLORIDA VIRTUALSCHOOL and FLVS with the U.S. Patent & Trademark Office ("PTO").  See Ex. C; Ex. D.  Pursuant to 15 U.S.C. § 1051, applicants are required to file a verification, swearing that the applicant is "the owner of the marks sought to be registered."  15 U.S.C. §1051(a)(3).  Plaintiff filed these verifications – specifically acknowledging in each that "willful false statements and the like so made are punishable by fine or imprisonment, or both" and "may jeopardize the validity of the application or any resulting registration."  Ex. C (verification on last page); Ex. D (verification on last page).  The PTO, presumably having – at the time – no reason to question Plaintiff's verifications, issued registrations for the two marks on August 10, 2010 and November 9, 2010, respectively.  See Compl., Exs. A & B.

### C.    Plaintiff's Lobbying Efforts

Nine months after filing this lawsuit – suddenly concerned about the limited scope of its authority under its governing statute – Plaintiff set out to acquire new powers. Specifically, Plaintiff's trial counsel embarked on a lobbying campaign to amend Plaintiff's governing statute.  See Ex. A.  Acting on behalf of Plaintiff, Plaintiff's trial counsel sent a

5

series of e-mails to members of the Florida legislature and their staff.  Id.  Those e-mails

proposed an amendment to Section 1002.37(c) that would give Plaintiff (rather than the

State) the very ownership rights in the intellectual property that it uses that Plaintiff swore in

its trademark applications that it already had.  The proposed amendment also would give

Plaintiff the right to "take any action necessary, including legal action, to protect the same

against improper or unlawful use or infringement."  Id.  Plaintiff's proposed amendments to

1002.37(c) – with additions underlined and deletions stricken – are as follows:

> Any other law to the contrary notwithstanding, the Florida Virtual School is, and has since its formation been, authorized, in its own name, to:
>
> 1. The board of trustees may Perform all things necessary to acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests thereunder or therein. Ownership of all such patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein shall vest in the Florida Virtual School state, with the board of trustees, on behalf of the Florida Virtual School, having full right of use and full right to retain the revenues derived therefrom. Any funds realized from patents, copyrights, trademarks, or licenses shall be considered internal funds as provided in s. 1011.07. Such funds shall be used to support the school's marketing and research and development activities in order to improve courseware and services to its students.
>
> 2. Take any action necessary, including legal action, to protect the same against improper or unlawful use or infringement.
>
> 3. Enforce the collection of any sums due the Florida Virtual School for the use thereof by any other party.
>
> 4. Sell any of the same and execute all instruments necessary to consummate any such sale.
>
> 5. Do all other acts necessary and proper for the execution of the powers and duties herein conferred upon the Florida Virtual School.

Id.  In rationalizing Plaintiff's desire for these amendments, Plaintiff's trial counsel expressed

the concern that "other entities would misinterpret the current version of this provision by

claiming FLVS cannot possess or enforce trademark or copyright rights." Id.  The 2012

legislative session concluded on March 9, 2012,[1] and the Florida legislature did not enact

Plaintiff's proposed amendment.  On April 10, 2012, Plaintiff's trial counsel produced copies

of his lobbying communications as a supplemental response to the K12 Defendants'

discovery requests.  See Ex. A.

> **D.      History of the K12 Defendants and their Marks and Acronyms in Florida**

The K12 Defendants have operated in the State of Florida since at least as early as

2003, providing services to the State, to the State's school districts, and directly to families

and students.  See Answer ¶ 3.  Among these services, the K12 Defendants have been

involved in publishing proprietary online curriculum and physical learning materials and

providing teaching services to kindergarten through twelfth grade students.  Ex. E (K12

Defendants' Interrog. Answers, Redacted to Eliminate Attorneys' Eyes Only Material) at

Answer to Interrog. No. 17.

The K12 Defendants began using the mark FLORIDA VIRTUAL ACADEMY and

the acronym FLVA in connection with certain of its services in the State of Florida at least as

early as the summer of 2003.  Id. at Answer to Interrog. No. 16.  They began using the mark

FLORIDA VIRTUAL PROGRAM and the acronym FLVP in connection with certain of its

services in the State of Florida at least as early as the 2008-2009 school year.  Id.

The Florida Department of Education has been well aware of the K12 Defendants'

use of these marks and acronyms and, in fact, expressly approved such use.  For example, the

original contract executed by K12 Florida LLC and the Florida Department of Education in

---

[1] See http://www.flsenate.gov/Media/PressRelease/Show/953 (last checked May 4, 2012).

2003 – the terms of which were approved and agreed to by the Florida Department of Education – indicated that the K12 Defendants would be using the mark FLORIDA VIRTUAL ACADEMY and employing the acronym FLVA. See Ex. F at K12_0001532-34. Similarly, an application that K12 Florida LLC submitted to the Florida Department of Education in 2009 – the terms of which were approved by the Florida Department of Education – indicated that the K12 Defendants would be using the mark FLORIDA VIRTUAL PROGRAM. See Ex. G at K12_0014097, K12_0014097, K12_0014143-148, K12_0014155-202. In fact, the Florida Department of Education's website specifically acknowledges the K12 Defendants' use of the Accused Marks and Acronyms. See, e.g., Ex. H (featuring pages printed from Florida Department of Education's website).

For its part, Plaintiff has been aware of the K12 Defendants' use of the Accused Marks and Acronyms since those marks and acronyms first were adopted. For example, in the summer of 2003, Stuart "Brewser" Brown, a lobbyist representing the K12 Defendants, called Mark Maxwell, then serving as an officer of FLVS,[2] and left a voicemail indicating the K12 Defendants' intent to use the name FLORIDA VIRTUAL ACADEMY in the State of Florida. Ex. I (S. Brown Dep. Tr. Excerpts) at 157:16-161:5. Mr. Brown left this voicemail before the K12 Defendants finalized their choice of a name and included that name in the contract executed by the Florida Department of Education. Id. Several weeks after Mr. Brown left the voicemail, Mr. Maxwell finally called back, asking why the K12 Defendants had selected the name FLORIDA VIRTUAL ACADEMY. Id. Mr. Brown explained that the name was consistent with the K12 Defendants' national naming convention – combining the

---

[2] Ex. J (M. Maxwell Dep. Tr. Excerpts) at 75:11-76:1.

name of the state in which the services were provided with the words "Virtual Academy." Id. at 70:4-71:17, 159:25-160:3.[3]  That appeared to be the end of the matter, at least for a number of years.  Id. at 74:23-75:16.

On December 1, 2009, an attorney purporting to act on behalf of Plaintiff left a voicemail for one of the K12 Defendants' employees regarding the K12 Defendants' use of certain of the Accused Marks and Acronyms.  The K12 Defendants replied promptly with a letter from their deputy general counsel, explaining the basis for their rights in the marks FLORIDA VIRTUAL ACADEMY and FLORIDA VIRTUAL PROGRAM and asserting their belief that the matter was closed.  See Ex. K.  Plaintiff failed to respond.  A year and a half later, without any warning, Plaintiff filed the instant lawsuit.

## ARGUMENT

### I.    Plaintiff Lacks Standing Because It Has No Statutory Authority To File And Pursue This Lawsuit

As established above, Plaintiff is a state agency, created and governed by statute.  See Fla. Stat. § 1002.37.  Under Florida law, agencies, like Plaintiff, "have no inherent or common law powers."  College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 948 F.Supp. 400, 412 (D.N.J. 1996) (citing Kizar v. Wittenberg, 398 So. 2d 1002, 1003 (Fla. Dist. Ct. App. 1981); State ex rel. Greenberg v. Florida State Bd. of Dentistry, 297 So. 2d 628, 636 (Fla. Dist. Ct. App. 1974), cert. dismissed, 300 So. 2d 900 (Fla. 1974)).[4] Instead, they have "only those powers specifically granted to them by the legislature."

---

[3] Although Mr. Maxwell has testified that he does not to recall the conversation with Mr. Brown, he acknowledged that the conversation may have occurred and testified that Mr. Brown "is an honest person."  Ex. J (M. Maxwell Dep. Tr. Excerpts 111:24-112:11).

[4] See also Greenberg, 297 So. 2d at 636 ("Administrative bodies have no common law powers.").

9

College Sav. Bank, 948 F. Supp. at 412 (emphasis added).[5]  And where an agency lacks

statutory authority to pursue litigation, the lawsuit must be dismissed for lack of standing.

See, e.g., Morse v. Dade County Canvassing Bd., 456 So. 2d 1314 (Fla. Dist. Ct. App. 1984)

(dismissing for lack of standing a lawsuit filed by a county canvassing board where the

board's stance in the litigation was found to be inconsistent with the board's statutory

duties).[6]  As explained below, Plaintiff lacks authority to pursue this lawsuit.  Accordingly,

the Court should dismiss Plaintiffs' claims for lack of standing.

> ### A.  The Plain Meaning of Plaintiff's Governing Statute Makes Clear That Plaintiff has No Authority to File and Pursue this Lawsuit

As both Florida and federal courts have explained, "We endeavor to construe statutes

to effectuate the intent of the Legislature.  To discern legislative intent, we look primarily to

the actual language used in the statute."  Borden v. East-European Ins. Co., 921 So. 2d 587,

595 (Fla. 2006) (citations & quotation omitted); see also Belanger v. Salvation Army, 556

F.3d 1153, 1155 (11th Cir. 2009) ("Our task is to give effect to the legislative intent of the

statute.  In attempting to discern legislative intent, we first look to the actual language used in

the statute.") (citations & quotation omitted).  Under the plain language of Section 1002.37 –

and its predecessor Section 228.082 – the Florida legislature granted Plaintiff certain,

specific, limited intellectual property rights.  In particular, Plaintiff "may acquire, enjoy, use,

---

[5] See also Dep't of Envtl. Protection v. Landmark Enterprises, Inc., 3 So. 3d 434, 437 (Fla. Dist. Ct. App. 2009) ("Simply put, the [Department of Environmental Protection], as a creature of statute, is governed by statute. It can exercise only the powers granted it by the legislature."); Peck Plaza Condo.  v. Division of Florida Land Sales and Condominiums, Dept. of Bus. Regulation, 371 So. 2d 152, 154 (Fla. Dist. Ct. App. 1979) ("It is a generally accepted principle of administrative law that an agency, being a creature of statute, has only those powers given to it by the legislature[.]") (citation & quotation omitted); Greenberg, 297 So. 2d at 636 ("[Administrative bodies] are creatures of the Legislature and what powers they have are limited to the statutes that create them.").

[6] C.f. E.E.O.C. v. Westinghouse Elec. Corp., 765 F.2d 389, 393 (3d Cir. 1985) ("The authority of one executive agency or another to institute such suits is properly characterized as a question of standing[.]")

and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests thereunder or therein." Fla. Stat. § 1002.37(2)(c).  The statute proceeds to define precisely what this means:  Plaintiff has the "full right of use and full right to retain the revenues derived" from intellectual property, but "[o]wnership of all such patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein shall vest in the state." Id.

In general, the terms used in statutes "must be construed according to their common and ordinary meanings."  Univ. of Florida Bd. of Trustees v. Andrew, 961 So. 2d 375, 376 (Fl. Dist. Ct. App. 2007) (citing Donato v. Am. Tel. & Tel. Co., 767 So. 2d 1146 (Fla.2000)). Courts frequently turn to dictionaries to assist with this process.  See, e.g., 1000 Friends of Florida, Inc. v. Palm Beach Cnty., 69 So.3d 1123, 1126 (Fla. Dist. Ct. App. 2011) ("'It is appropriate to refer to dictionary definitions when construing statutes or rules.'") (quoting Barco v. Sch. Bd. of Pinellas Cnty., 975 So. 2d 1116, 1122 (Fla .2008)); United States v. McNab, 331 F.3d 1228, 1237 (11th Cir. 2003) ("[W]e turn first to the common usage or ordinary meaning of the word 'law' to determine its plain meaning. . . .  [T]o determine the common usage or ordinary meaning of a term, courts often turn to dictionary definitions for guidance.") (citations & quotation omitted)

Dictionaries define "use" as "the benefit or profit of property established in one other than the legal possessor" and "the act or practice of employing something."  Merriam-Webster's Collegiate Dictionary 1301 (10th ed. 1999).  In other words, Plaintiff may "benefit" and even "profit" by "employing" intellectual property that belongs to the State – including the marks FLORIDA VIRTUALSCHOOL and FLVS.  But that is the beginning

11

and end of Plaintiffs' intellectual property rights.  Nowhere does Section 1002.37 – or any

other statute, for that matter – provide Plaintiff the powers to <u>police</u>, <u>protect</u>, <u>enforce</u>, or <u>file</u>

<u>suit in regard to</u> such intellectual property.  And in construing the scope of Plaintiff's

intellectual property rights, the Court may not read into the statute words, like these, that the

legislature has omitted.  <u>See, e.g.</u>, <u>Andrew</u>, 961 So. 2d at 377 ("When interpreting a statute,

courts are not at liberty to add words to the statute that were not placed there by the

legislature."); <u>Friends of Everglades v. South Fla. Water Mgmt. Dist.</u>, 570 F.3d 1210, 1224

(11th Cir. 2009) ("But we are not allowed to add or subtract words from a statute; we cannot

rewrite it.") (collecting citations).

       As indicated by the plain language of Plaintiff's governing statute, the Florida

legislature never intended to grant Plaintiff the powers to <u>police</u>, <u>protect</u>, <u>enforce</u>, or <u>file suit</u>

<u>in regard to</u> any intellectual property – including the marks FLORIDA VIRTUALSCHOOL

and FLVS.  In short, Plaintiff simply was not and is not authorized to pursue this litigation.

**B.     Interpretative Aids Confirm that Plaintiff has No Authority to File and Pursue this Lawsuit**

       The canons of statutory construction, the broader statutory context, and the legislative

history of Plaintiff's governing statute only serve to confirm that Plaintiff has no statutory

authority to proceed with its claims.

**1.     Interpretative Canons**

       The interpretative canon of *expressio unius est exclusio alterius* makes clear that the

Florida legislature did not intend to invest Plaintiff with the power to pursue this proceeding.

"The principle of *expressio unius* simply says that when a legislature has enumerated a list or

series of related items, the legislature intended to exclude similar items not specifically

included in the list." <u>Christian Coalition of Fla., Inc. v. United States</u>, 662 F.3d 1182, 1193

(11th Cir. 2011); <u>see also</u> <u>United Auto. Ins. Co. v. Salgado</u>, 22 So. 3d 594, 600 (Fl. Dist. Ct.

App. 2009) ("It is, of course, a general principle of statutory construction that the mention of

one thing implies the exclusion of another; expression unius est exclusion alterius.  Hence,

where a statute enumerates the things on which it is to operate, or forbids certain things, it is

ordinarily to be construed as excluding from its operation all those not expressly

mentioned.").  In Plaintiff's governing statute, the Florida legislature specifically enumerated

the intellectual property rights it wished Plaintiff to have:  "full right of use and full right to

retain the revenues derived" from intellectual property – or, at a more granular level, the

authority "acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any

licenses and other rights or interests thereunder or therein."  Fla. Stat. § 1002.37(2)(c).

Under the principle of *expressio unius*, the Florida legislature's failure to include in these

lists the rights to <u>police</u>, <u>protect</u>, <u>enforce</u>, or <u>file suit in regard to</u> any intellectual property

confirms that the Florida legislature intended to withhold those powers from Plaintiff.

> ### 2.    Statutory Context

Turning to the statutory context, three other Florida statutes, besides Section 1002.37,

feature language investing a state-created entity with authority to "[a]cquire, enjoy, use, and

dispose of patents, copyrights, and trademarks[.]"  <u>See</u> Fl. Stat. §§ 228.9015, 331.305,

1001.451.  Two of these statutes omit any reference to the State's ownership rights and

specifically provide the state-created entities with broad powers to sue and be sued.  <u>See</u> Fl.

Stat.  § 228.9015(2) ("The board of directors of Enterprise Florida, Inc., may: . . . . Sue and

be sued, and appear and defend in all actions and proceedings, in its corporate name to the

13

same extent as a natural person [and] . . . .  Acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses, royalties, and other rights or interests thereunder or therein."),[7] § 331.305 ("Space Florida may: . . .  Sue and be sued by its name in any court of law or in equity [and]. . . .  Acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests under or in such licenses.").  As to the latter entity, a related statute specifically confirms that Space Florida owns and has the authority to enforce its intellectual property rights.[8]  In short, the Florida legislature knew precisely how to write a statute in order to grant a state entity the power to enforce intellectual property rights.  It chose not to do so when drafting (or amending) Plaintiff's governing statute.  As the Eleventh Circuit explained in the context of interpreting federal legislation, "[w]here Congress knows how to say something but chooses not to, its silence is controlling."  Delgado v. U.S. Att'y Gen., 487 F.3d 855 (11th Cir. 2007) (applying this principle:  "Although the asylum statute explicitly creates derivative rights for the spouse of a petitioner, the withholding statute contains no mention of derivative rights. . . . Congress's silence thus dictates our holding in this case: there are no derivative benefits associated with a grant of withholding of removal.") (citations & quotation omitted).  The same principles apply when interpreting Florida statute statutes.  See Landmark Enterprises,

---

[7] This language was enacted in 1996, four years before the Florida legislature passed Plaintiff's original governing statute.  See 1996 Fla. Sess. Law Serv. Ch. 96-320 (1996).

[8] See Fla. Stat. § 331.355 ("[T]he legal title and every right, interest, claim, or demand of any kind in and to any patent, trademark, copyright, certification mark, or other right acquired under the patent and trademark laws of the United States or this state or any foreign country, or the application for the same, as is owned or held, acquired, or developed by Space Florida, under the authority and directions given it by this part, is vested in Space Florida for the use, benefit, and purposes provided in this part. Space Florida is vested with and is authorized to exercise any and all of the normal incidents of such ownership, including the receipt and disposition of royalties.") (emphasis added).  Nearly all of this language was enacted in 1992, eight years before the Florida legislature passed Plaintiff's original governing statute.  See 1992 Fla. Sess. Law Serv. Ch. 92-93 (1992).

3 So. 3d at 436 ("If the legislature desired the [Department of Environmental Protection] to act as a receiver, it knew how to do so, as illustrated by instances where it empowered other state agencies to so act when needed."); <u>Andrew</u>, 961 So. 2d at 377 ("[A]s Appellees point out, the legislature used the term 'branch campus' in other statutes, including five provisions that were passed in the same legislative session as the language in question. . . . There is no question the legislature could have chosen that particular term again if it wanted to.").

Taking a step back from the specific issue of intellectual property rights, it bears notice that Plaintiff's governing statute makes no reference to the broad power "to sue or be sued."  By contrast, the statutes governing many other education-related institutions include that power.  <u>See, e.g.</u>, Fl. Stat. §§ 1002.36 (granting the board of trustees of the Florida School for the Deaf and the Blind "full power and authority" to "sue and be sued"), 1002.34 (granting charter technical career centers certain powers to "[s]ue and be sued"); 1001.41(4) (granting district school boards the authority to "sue, and be sued"), 1001.63 (granting each Florida College System institution board of trustees the power to "sue or be sued"); 1001.72 (granting university boards of trustees the power to "sue and be sued").  The omission of this language from Plaintiff's governing statute is telling.  It underscores the fact that the Florida legislature never intended to invest Plaintiff with broad autonomy on matters of litigation. The Florida legislature certainly never intended that Plaintiff would go running to the courthouse in situations like this where the Plaintiff's suit challenges conduct that the State already expressly has approved.

### 3.     Legislative History

The legislative history of Plaintiff's governing statute further supports these points, making clear that the state legislature had no intention of investing Plaintiff with complete authority over its intellectual property rights and interests. See, e.g., McNab, 331 F.3d at 1238 ("In trying to learn Congressional intent by examining the legislative history of a statute, we look to the purpose the original enactment served, the discussion of statutory meaning in committee reports, the effect of amendments whether accepted or rejected and the remarks in debate preceding passage."). The original bill proposed in 2000 as Plaintiff's governing law by Representative Lynn made no mention of the State when describing Plaintiff's intellectual property rights:

> The board of trustees . . . may acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests thereunder, or therein.   Any funds realized from patents, copyrights, trademarks, or licenses shall be used to support the school's research and development activities in order to improve courseware and services to its students.

H.B. 2063(2)(b) (2000) (attached hereto as Ex.  L);.  The legislature amended Representative Lynn's language before passing the bill in order to "[c]larif[y] that ownership of all patents, copyrights, trademarks, licenses, and rights or incentives thereunder and therein must vest in the state, with the board having full right of use and full right to retain the revenues derived therefrom."  House Comm. On Education Innovation, Final Analysis for CS/HB 2063 § VI (emphasis added) (attached hereto as Ex.  M); see also id. § I ("Although the ownership of patents, copyrights, and trademarks and any licenses remains with the state, the board has the full right of use and full right to retain any revenues derived[.]") (emphasis added).  In short, the legislature took pains to emphasize that Plaintiff's rights were subordinate to those of the

State and were expressly limited to (i) using the State's intellectual property  and (ii) retaining revenues derived from the use of that property.

It therefore should come as no surprise that the legislature recently declined to adopt Plaintiff's proposed amendments to the statute.  As explained above, Plaintiff's amendments would have granted Plaintiff (rather than the State) ownership rights in the intellectual property that it uses – including the marks FLVS and FLORIDA VIRTUALSCHOOL – along with authority to "take any action necessary, including legal action, to protect the same against improper or unlawful use or infringement."  See supra 5-7.  True to its original intent, the Florida legislature had no wish to grant Plaintiff these additional powers.  See Nikolits v. Nicosia, 682 So. 2d 663, 665 (Fl. Dist Ct. App. 1996) ("[B]y virtue of the failure to amend the general ballot statute, [the legislature] demonstrated its intent that that same discretion or authority not be given to the Supervisor of Elections in general elections.").

### C.    Plaintiff's Limited Authority as a Body Corporate Cannot Save Plaintiff's Lawsuit from Dismissal

Doubtless, in its response to this Motion, Plaintiff will strive to argue that some vague statutory provision authorizes its actions in pursing these claims – e.g., "The board of trustees shall be a body corporate with all the powers of a body corporate and such authority as is needed for the proper operation and improvement of the Florida Virtual School."  Fla. Stat. § 1002.37(2).  But this language fails to invest Plaintiff with the authority to pursue this litigation for at least three reasons[9]:

---

[9] Of course, for present purposes, the Court need not construe the full scope of Plaintiff's rights under the "body corporate" language.  At most, the Court need only determine whether this, or any other, language in Plaintiff's governing statute grants Plaintiff the specific right to pursue this lawsuit involving state owned property.

First, the "body corporate" language vests Plaintiff only with "such authority as is needed for the proper operation and improvement of the Florida Virtual School." Id.; see also, e.g., College Sav. Bank, 948 F. Supp. at 413 ("[L]ike all Florida state agencies, [this one] has only the powers and degree of independence necessary for it to carry out the tasks assigned to it by the State of Florida."). This lawsuit bears absolutely no relation to "the proper operation and improvement of the Florida Virtual School." Fla. Stat. § 1002.37(2). "The mission of the Florida Virtual School is to provide students with technology-based educational opportunities to gain the knowledge and skills necessary to succeed." Fla. Stat. § 1002.37(1)(b). As explained above, the K12 Defendants themselves function collectively as a state-authorized provider of technology-based educational opportunities for students in the State of Florida. See supra at 7. By suing the K12 Defendants over marks and acronyms that expressly were approved by the State, Plaintiff serves only to burden the parties and distract them from providing their respective "technology-based educational opportunities" to the students of Florida. Id. This surely is not what the Florida legislature intended.

Second, it is well-established that "a more specific statutory provision governs over a more general provision." R.C. v. State, 948 So. 2d 48, 51 n.2 (Fla. App. 2007); see also Katherine's Bay, LLC v. Fagan, 52 So. 3d 19 (Fla. App. 2010) (observing that this rule of statutory construction is well-established); Medberry v. Crosby, 351 F.3d 1049 (11th Cir. 2003) (applying the "canon of statutory construction that the more specific takes precedence over the more general"). As explained above, the Florida legislature was very precise in determining which limited intellectual property rights should be granted to Plaintiff and

which should be retained by the State. See 1002.37(2)(c). The language of that specific

provision, Section 1002.37(2)(c), trumps whatever interpretation Plaintiff's counsel might

attempt to force onto the generalized "body corporate" provision.

Third, Plaintiff's attempt to amend its governing statute is telling. As described

above, during the last legislative session, Plaintiff attempted, in vain, to amend the statute to

give Plaintiff the right to take legal action "to protect" the intellectual property it uses from

"improper or unlawful use or infringement." Ex. A. If Plaintiff truly believed that it already

possessed those rights under the "body corporate" language – or any other language for that

matter – Plaintiff's proposed amendments would have been unnecessary and redundant.

### D. The Attorney General has the Authority to Pursue Any Legitimate Intellectual Property Enforcement Actions

Naturally, the fact that Plaintiff does not have the power to bring this lawsuit does not

mean that the State of Florida is powerless to protect its own intellectual property rights. The

Florida attorney general has the power to "prosecut[e] 'all actions necessary for the

protection and defense of the property and revenue of the state[.]'" Thompson v.

Wainwright, 714 F.2d 1495, 1500 (11th Cir. 1983) (quoting State ex rel. Landis v. S.H. Kress

& Co., 155 So. 823, 827 (1934)). For the reasons explained above, it was the State's intent to

leave to the attorney general the decision whether to pursue litigation in matters like this

one.[10] As noted above, this approach makes sense as a policy matter, enabling the attorney

general to take a broad view of the State's interests and needs – avoiding the sort of conflicts

---

[10] Needless to say, nothing in the Lanham Act, or any other Act of Congress, can serve to expand the authority that a state legislature chooses to assign to an agency that it creates. See, e.g., New York v. United States, 505 U.S. 144, 162 (1992) ("[T]he Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions.").

triggered by this lawsuit, where one state agency seeks to challenge conduct already expressly approved by the State.

As explained above, the State of Florida has the authority to determine which powers and duties it will invest in its state agencies. Because the State has elected to place its intellectual property enforcement rights in the hands of its attorney general rather than in the hands of Plaintiff, Plaintiff has no standing to pursue this lawsuit.

## II.     In The Alternative, The Court Should Dismiss Count I For Lack Of Standing Under The Provisions Of The Lanham Act

The Court can and should dismiss all of Plaintiff's claims for lack of standing because Plaintiff lacks the statutory authority to pursue this litigation. But in the event the Court disagrees, the Court still should dismiss for lack of standing Count I of Plaintiff's Complaint. Count I of Plaintiff's Complaint asserts a claim for infringement of federally registered service marks pursuant to 15 U.S.C. § 1114. To have standing under Section 1114, the plaintiff must either be the legitimate registrant of registered mark or the registrant's exclusive licensee. See Hako-Med USA, Inc. v. Axiom Worldwide, Inc., No. 8:06-CV-1790-T-27EAJ, 2006 WL 3755328, at *6 (M.D. Fla. Nov. 15, 2006), adopted by, 2006 WL 3760415 (M.D. Fla. Dec. 19, 2006); see also 15 U.S.C. § 1114(1) (allowing for a "civil action by the registrant"). Plaintiff is neither.

### A.     Plaintiff's Service Mark Registrations Are Void

First, Plaintiff is not the legitimate registrant of the asserted marks. It is true that Plaintiff has been issued registrations for the service marks FLORIDA VIRTUALSCHOOL and FLVS. But those registrations are void *ab initio* because contrary to its own sworn representations in its service mark applications, Plaintiff was not the owner of those marks at

the time it applied for the registrations.  Plaintiff filed its applications to register the service

marks FLORIDA VIRTUALSCHOOL and FLVS with the PTO on September 22, 2009 and

April 1, 2010, respectively.  See Ex. C; Ex. D.  Only the owner of a trademark or a service

mark may apply to register a mark.  See 15 U.S.C. §§ 1051(a) (indicating that the "owner" of

a trademark may request registration and requiring that applicants verify that they are "the

owner of the mark sought to be registered"), 1053 ("service marks shall be registrable, in the

same manner and with the same effect as are trademarks").  Indeed, pursuant to 15 U.S.C. §

1051, applicants are required to file a verification, swearing that the application is "the owner

of the marks sought to be registered."  15 U.S.C. §1051(a)(3).  Plaintiff filed these

verifications – specifically acknowledging in each that "willful false statements and the like

so made are punishable by fine or imprisonment, or both" and "may jeopardize the validity of

the application or any resulting registration."  Ex. C (verification on last page); Ex. D

(verification on last page).  The PTO, presumably having – at the time – no reason to doubt

Plaintiff's verifications, issued registrations for the two marks on August 10, 2010 and

November 9, 2010, respectively.  See Compl., Exs. A & B.

   But Plaintiff's verifications are false.  Contrary to its representations made under oath

before the PTO, Plaintiff is not the owner of the marks FLORIDA VIRTUALSCHOOL and

FLVS.  Nor can it be.  Plaintiff's governing statute makes clear, as a matter of law, that

"[o]wnership of all such patents, copyrights, trademarks, licenses, and rights or interests

thereunder or therein shall vest" in the State of Florida, rather than in Plaintiff.  See Fl. Stat. §

1002.37(2)(c); see also Ex. M (House Comm. On Education Innovation, Final Analysis for

CS/HB 2063 § VI) (explaining that the legislature amended the original proposed bill in

order to "[c]larif[y] that <u>ownership of all patents, copyrights, trademarks,</u> licenses, <u>and rights</u> or incentives <u>thereunder</u> and therein <u>must vest in the state</u>") (emphasis added); <u>supra</u> at 9-17. Because Plaintiff was not – and, for that matter, is not – the owner of the marks FLORIDA VIRTUALSCHOOL and FLVS, Plaintiff's applications – and the resulting registrations – are void *ab initio*. <u>See, e.g.,</u> <u>Great Seats, Ltd. v. Great Seats, Inc.</u>, 84 U.S.P.Q.2d 1235, 1239 (Trademark Tr. & App. Bd. 2007) ("In a use-based application under Trademark Act Section 1(a), only the owner of the mark may file the application for registration of the mark; if the entity filing the application is not the owner of the mark as of the filing date, the application is void ab initio. This statutory ownership requirement cannot be waived.") (citing <u>Huang v. Tzu Wei Chen Food Co., Ltd.,</u> 849 F.2d 1458 (Fed. Cir. 1988); some citations omitted); <u>Warden v. Falk</u>, No. Civ. A. 11–2796, 2011 WL 4403033, at *3 (E.D.Pa. Sept. 21, 2011) ("A trademark cannot be registered if the applicant does not own the trademark, thus, a mark may be cancelled upon a showing that the entity holding the mark's registration is not the lawful owner."); <u>Sonwa Int'l Corp. v. Mustek Corp.,</u> No. 86 Civ. 4262 (JFK), 1987 WL 6150, at *6 (S.D.N.Y. Jan. 30, 1987) ("because Sonwa Taiwan is the owner of the mark, and because the right to use that mark was never granted exclusively to Sonwa New York, the United States registration of the mark is void ab initio"); USPTO, <u>Trademark Man. of Exam. Proc.</u> 1201.02(b) (8th ed. 2011) ("If the applicant does not own the mark on the application filing date, the application is *void*.") (collecting citations).

## B.    Plaintiff Cannot Claim Standing As An Exclusive Licensee

Nor can Plaintiff claim standing as an exclusive licensee.  As a preliminary matter, even assuming *arguendo* that Plaintiff's governing statute constitutes a license of some sort

from the State to use the marks FLORIDA VIRTUALSCHOOL and FLVS, where, as here, the license's "provisions provide that the licensor retains exclusive ownership of the mark, the licensee lacks standing to bring an infringement action." Hako-Med, 2006 WL 3755328, at *6; see also Gruen Mktg. Corp. v. Benrus Watch Co., Inc., 955 F. Supp. 979, 983 (N.D.Ill. 1997) ("Gruen's argument, however, does not overcome the express language of the License Agreement that Benrus retained ownership of the BENRUS mark.  A licensee lacks standing where the agreement indicates that the licensor retains exclusive ownership of the mark.") (citations omitted).  As explained above, Plaintiff's governing statute expressly provides that the State of Florida retains exclusive ownership of all intellectual property used by Plaintiff.

Even putting aside this express provision, Plaintiff cannot claim to be the exclusive licensee of the State's intellectual property.  Plaintiff's governing statute specifically contemplates the existence of other "licenses":  "The board of trustees may acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests thereunder or therein.  Ownership of all such patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein shall vest in the state[.]"  Fla. Stat. § 1002.37(2)(c) (emphasis added).  And Plaintiff has conceded the existence of other licenses to the marks FLORIDA VIRTUALSCHOOL and FLVS.  See Ex. N (Plaintiff's Supplemental Interrog. Responses, Redacted to Eliminate Attorneys' Eyes Only Material) at Answer to Interrog. No. 21 ("FLVS has licensed a number of entities to use its FLVS or FLORIDA VIRTUALSCHOOL trademarks where those entities are offering FLVS courses or other FLVS services to their students.").  Where, as here, any license that Plaintiff could

23

claim would be "non-exclusive," "the licensee does not have standing to bring an infringement action."  Hako-Med, 2006 WL 3755328, at *6 (citations omitted).

In short, because Plaintiff is neither the legitimate registrant nor the exclusive licensee of the marks asserted in this lawsuit, it lacks standing to pursue its claim under 15 U.S.C. § 1114(1).  Accordingly, the Court should dismiss Count I of Plaintiff's Complaint.

### C.      The Court Should Cancel Plaintiff's Service Mark Registrations

Furthermore, because Plaintiff's service mark registrations are void, for the reasons explained above, the Court should exercise its broad powers under 15 U.S.C. § 1119 and order the PTO to cancel those registrations.  See 15 U.S.C. § 1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action.").

In view of the recent revelations concerning Plaintiff's governing statute, the K12 Defendants soon will be filing a motion to amend their Answer to include counterclaims for fraud on the PTO and to seek cancellation of Plaintiff's registrations.[11]   But the Court need not wait for this amendment in order to cancel Plaintiff's registrations.  Sykes Lab., Inc. v. Kalvin, 610 F. Supp. 849, 863 n.10 (C.D. Cal. 1985) (quoting 15 U.S.C. § 1119) ("Defendants did not file any counterclaim in support of their request that plaintiff's registration be cancelled.  The existence of such an independent claim for relief would not, however, appear to be a prerequisite to an order cancelling a registration under section

---

[11]As will be explained in the K12 Defendants' forthcoming motion to amend, the addition of these counterclaims will not prejudice the parties or prolong the discovery period.  Cancellation is appropriate as a matter of law, for the reasons set forth above.  And fraud, based on the false declarations submitted by Plaintiff to the PTO, will be established through discovery that the parties already intend to conduct.

24

1119."). "Where, as here, a registrant's asserted rights to a mark are shown to be invalid, cancellation is not merely appropriate, it is the best course." <u>Central Mfg., Inc. v. Brett</u>, 492 F.3d 876, 883 (7th Cir. 2007).

## CONCLUSION

For the reasons set forth above, the K12 Defendants respectfully request that the Court should dismiss all of Plaintiff's claims for lack of standing. In the alternative, in the event the Court finds that Plaintiff does have standing to assert certain claims against the K12 Defendants, the Court should dismiss Plaintiff's claim for infringement of federally registered service mark, pursuant to 15 U.S.C. § 1114, and should cancel Plaintiff's service mark registrations.

<div align="center" style="margin-left:40%">

s/ Stephanie L. Carman
Stephanie L. Carman
Florida Bar No. 499463
Hogan Lovells US LLP
200 South Biscayne Blvd.
Suite 400
Miami, Florida 33131
Telephone: 305-459-6500
Facsimile: 305-459-6550
stephanie.carman@hoganlovells.com

Michael D. Kass (admitted *pro hac vice*)
Hogan Lovells US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: 202-637-6967
Facsimile: 202-637-5910
mike.kass@hoganlovells.com

**Attorneys for Defendants
K12 Inc. and K12 Florida LLC**

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2012, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF.  Copies of the foregoing document will be served upon interested counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Stephanie L. Carman