**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FLORIDA VIRTUALSCHOOL,**

              **Plaintiff,**

-vs-                                                                **Case No. 6:11-cv-831-Orl-31KRS**

**K12, INC. and K12 FLORIDA, LLC,**

              **Defendants.**

## ORDER

This cause comes before the Court on a Motion for Summary Judgment and a Motion to Dismiss (Doc. 30) filed by Defendants, K12, Inc. and K12 Florida LLC ("the K12 Defendants" or "Defendants"); a Response (Doc. 40) filed by Plaintiff, Florida VirtualSchool ("FLVS"); and a Reply (Doc. 48).

**I. Background**

FLVS brings this action alleging infringement of registered marks under Section 32 of the Lanham Act, 15 U.S.C. §114 (Count I), service mark infringement and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) (Count II), cyberpiracy under Section 43(d) of the Lanham Act (Count III), and common law service mark infringement and unfair competition (Count IV) against Defendants. In 1997, Plaintiff was founded under the name "Florida On-Line High School." (Compl. ¶ 8). Plaintiff is an educational institution whose mission is to provide online courses to students throughout the United States and foreign countries. (Id.). In June 2000, Plaintiff became an agency of the State of Florida pursuant to Section 228.082 of the

Florida Statutes. In 2002, Section 228.082 of the Florida Statutes was amended and renumbered as Section 1002.37 of the Florida Statutes. At this time, Plaintiff's name was changed to "Florida VirtualSchool." Fla. Stat. § 1002.37.

Section 1002.37 of the Florida Statutes dictates the purpose, nature and governance of FLVS.[1] The statute also defines the powers and duties of FLVS's governing body. Fla. Stat. §1002.37(2)(c). With respect to FLVS's intellectual property rights, the enabling statute provides: "The board of trustees may acquire, enjoy, use, and dispose of patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein. Ownership of all such patents, copyrights, trademarks, licenses, and rights of interest thereunder or therein shall vest in the state . . ." Fla. Stat. §1002.37(2)(c). The enabling statute subsequently states that "[t]he board of trustees shall be a body corporate with all the powers of a body corporate and such authority as is needed for the proper operation and improvement of the Florida Virtual School." Fla. Stat. §1002.37(2)(l). In 2002, when FLVS began operating under the name Florida VirtualSchool, it was the only online education option available to public school students in Florida. (Doc. 40-1 ¶ 7). Since that time, FLVS has continuously used the "Florida VirtualSchool" and "FLVS" trademarks in United States commerce. (Doc. 1 ¶ 15, 17). In 2010, FLVS registered the "Florida VirtualSchool" and "FLVS" trademarks with the United States Patent and Trademark Office.[2] (Doc. 1 ¶ 16, 18).

---

[1] FLVS is governed by a board of trustees appointed by the Governor. (Fla. Stat. §1002.37(2)(c)).

[2] The Florida VirtualSchool mark is assigned the registration number 3,830,765. The FLVS mark is assigned the registration number 3,873,393.

In 2003, the State of Florida implemented a test pilot program for private online education providers to serve a limited number of students in Florida.[3] The K12 Defendants joined the pilot program and adopted the name "Florida Virtual Academy" ("FLVA") in documents filed with the Florida Department of Education ("FDOE"). (Doc. 1 ¶ 23).

## II. Analysis

The ultimate issue is whether FLVS, a state agency, has the right to bring suit under the Lanham Act to protect the marks in question.  For standing to exist under the Lanham Act, the plaintiff must be the owner of the mark in question or an exclusive licensee. *Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2006 WL 3755328, at *6 (M.D. Fla. Nov. 15, 2006). This Court will address both ownership and exclusive license in turn.

### A. Ownership of the Trademark

"A statutory agency does not possess any inherent powers; such agency is limited to powers granted, either expressly or by necessary implication, by the statutes creating (the agency)." *St. Regis Paper Co. v. State By and Through Florida Air and Water Pollution Control Commission*, 237 So.2d 797, 799 (Fla. 1st DCA 1970) (citing *Florida Industrial Commission ex rel. Special Disability Fund v. National Trucking Company,* 107 So. 2d 397 (Fla. 1st DCA 1958). In construing a statutory grant of authority, Courts first look to the plain language of the statute. *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1212-13 (11th Cir. 2010). A Court will only look beyond the plain language at extrinsic evidence if: "(1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3)

---

[3] Each participant in the pilot program could serve up to 500 families with students in kindergarten through eighth grade. (Birtolo Decl., ¶ 8).

there is clear evidence of contrary legislative intent." *Id.* This Court will begin its analysis by examining the plain language of the statute to determine whether FLVS's statutory authority encompasses ownership of the marks at issue.

> The enabling statute states in relevant part:
>
> The board of trustees . . . may acquire, enjoy, use and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests thereunder or therein. Ownership of all such patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein shall vest in the state, with the board having full right of use and full right to retain the revenues derived therefrom.

Fla. Stat. §1002.37(2)(c). FLVS argues that it owns the marks at issue. In support of its argument, FLVS relies on the statutory language granting it the right to "acquire, enjoy, use, and dispose of" the marks. FLVS asserts that the aforementioned rights amount to ownership because such language has been used to denote ownership of property since the earliest jurisprudence in the United States. *Bartemeyer v. Iowa*, 85 U.S. 129, 137 (U.S. 1874); *see also Tatum Bros. Real Estate & Inv. Co. v. Watson*, 92 Fla. 278, 289 (Fla. 1926). Further, FLVS asserts that any interpretation that does not view FLVS as the owner of the marks creates ambiguity in the statute by allowing FLVS to unilaterally dispose of marks owned entirely by another entity. The K12 Defendants counter that the enumerated intellectual property rights do not convey the full range of ownership rights, but rather, reflect the Florida legislature's intent to grant FLVS specific, limited intellectual property rights indicative of a licensor-licensee relationship.

FLVS's argument concerning the scope of the right granted by the "acquire, enjoy, use and dispose of" language does not overcome the plain language of the statute which clearly vests "ownership" of the marks in the State of Florida—an entity separate and distinct from FLVS. Fla. Stat. §1002.37(2)(c). "A statute should be construed so that effect is given to all its provisions, so

that no part will be inoperative or superfluous, void or insignificant." *Kozak v. Hillsborough Cnty., Fla.*, 644 F.3d 1347, 1350-51 (11th Cir. 2011) (citing *Corley v. United States*, 556 U.S. 303 (2009)). Interpreting the rights to "acquire, enjoy, use and dispose of" the marks to grant FLVS ownership would render the provision vesting ownership in the state meaningless.

The K12 Defendants and FLVS agree that all assets of the State of Florida are held by departments and agencies of the state. Where marks belong to the State of Florida, the Department of State is authorized to hold the marks on behalf of the state and "take any and all action necessary, including legal actions, to protect the same against improper or unlawful use or infringement." Fla. Stat. §286.031. The plain language of the Florida statute clearly vests ownership of the marks in the State of Florida with the intent that the marks be held by the Department of State, not FLVS, which was granted only limited intellectual property rights.[4]

### B. Exclusive Licensee

An exclusive licensee is "granted a property interest in the trademark, or rights that amount to those of an assignee" by the licensing agreement and "has the right even to exclude his licensor from using the mark." *Trump Plaza of the Palm Beaches Condo. Ass'n v. Rosenthal*, 2009 WL 1812743, at *9 (S.D. Fla. June 24, 2009); s*ee also, Quabaug Rubber Co. V. Fabiano Shoe Co.*, 567 F.2d 154, 159 (1st Cir. 1977); *Finance Inv. Co. v. Geberit A. G.,* 165 F.3d 526, 531 (7th Cir.

---

[4] Even if the plain language of the enabling statute was ambiguous and warranted consideration of extrinsic evidence, such evidence supports the K12 Defendants' Motion to Dismiss for Lack of Standing under the Lanham Act. The original proposal of FLVS's enabling statute contained no language describing FLVS's intellectual property rights. H.B. 2063(2)(b)(2000). Before passing the bill, the legislature amended it to include the provision that "ownership of all patents, copyrights, trademarks, licenses, and rights or incentives thereunder or therein must vest in the state, with the board having full right of use and full right to retain the revenues derived therefrom." House Comm. on Education Innovation, Final Analysis for CS/HB 2063 §VI. This amendment prior to passing the bill provides additional support for the Court's finding that the Florida legislature viewed FLVS and the State of Florida as two distinct entities and intended to vest ownership of the marks at issue in the state.

1998). A licensing agreement that "merely confers a conditional, non-exclusive right to use the mark does not constitute an assignment," and such a licensee "does not have standing to enforce the mark in an infringement or dilution action under the Lanham Act." *Trump Plaza*, 2009 WL 1812743, at *9-10.

FLVS argues that, at minimum, it is an exclusive licensee with standing to sue under Lanham Act, 15 U.S.C. §1114. FLVS asserts that the grant of the "full rights of use" amounts to assignment because it precludes any other entity from using the marks. However, "full rights of use" is distinct from "exclusive rights of use." The statute does not provide FLVS the right to use the marks to the exclusion of others, including the State of Florida, which owns the marks. Where the provisions of the license (or enabling statute in the present case) "provide that the licensor retains exclusive ownership of the mark, the licensee lacks standing to bring an infringement action." *Hako-Med*, 2006 WL 3755328, at *6. Furthermore, the enabling statute specifically contemplates the existence of multiple licenses.[5]  This additionally supports the Court's finding that FLVS was not granted an exclusive license.

It is therefore,

**ORDERED** that Defendants' Motion (Doc. 30) is **GRANTED**. This case is **DISMISSED WITHOUT PREJUDICE**, any pending motions are **DENIED as MOOT**. The Clerk is directed to close the file.

---

[5] Florida Statutes Section 1002.37(2)(c) states in relevant part: "The board of trustees may acquire, enjoy, use, and dispose of patents, copyrights, and trademarks and any licenses and other rights or interests thereunder or therein. Ownership of all such patents, copyrights, trademarks, licenses, and rights or interests thereunder or therein shall vest in the state."

**DONE** and **ORDERED** in Chambers, Orlando, Florida on July 16, 2012.

Copies furnished to:

Counsel of Record
Unrepresented Party

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　GREGORY A. PRESNELL
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE